UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

LONGWOOD AUTO, LLC, and
MICHAEL MORRIS,

      Plaintiffs,

v                                          Case No. _____

GERARDO TORRES, and
CMG AUTO AND TIRE SALES, LLC,

      Defendants.
_____ //

## COMPLAINT FOR DAMAGES

Plaintiffs *LONGWOOD AUTO, LLC* and *MICHAEL MORRIS* sue the above-named defendants seeking both equitable and financial remedies from this Court, and allege the following in support thereof:

## JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because there are claims asserted in this lawsuit that arise under the laws of the United States of America, specifically the Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 USC §§ 1961-1968.

2. This Court has supplemental jurisdiction over the state law claims under 18 U.S.C. § 1367, as the state law claims share all common operative facts with the federal law claims, and the parties are identical.

3. Resolving all state and federal claims in a single action serves the interests of judicial, efficiency, economy, and fairness.

4. Venue is proper in this District based on 28 U.S.C. § 1391 because the acts giving rise to the Plaintiffs claims occurred within the boundaries of this District.

## IDENTIFICATION OF THE PARTIES

5. LONGWOOD AUTO LLC, ("*LWA*"), is a Florida limited liability company that maintains its principal place of business in Seminole County, Florida at 920 Silkwood Court, Longwood, Florida.

6. LWA is authorized by the State of Florida to operate as a licensed automobile dealer.

7. MICHAEL MORRIS ("*MORRIS*") is an individual that resides in Seminole County, Florida and he is the sole officer, manager, and owner of LWA.

8. GERARDO TORRES, ("*TORRES*"), is an individual that resides in Seminole County, Florida.

9. TORRES is the sole officer, manager, and owner of co-defendant CMG AUTO AND TIRED SALES LLC.

10. Based on publicly available information, TORRES is not authorized by the State of Florida to operate as a licensed dealer of motor vehicle under Chapter 320, Florida Statutes.

11. CMG AUTO AND TIRE SALES, LLC, ("CMG"), is a Florida limited liability company that maintains its principal place of business in Seminole County, Florida.

12. Based on publicly available information, CMG is not an authorized by the State of Florida to operate a business as a licensed dealer of motor vehicles under Chapter 320, Florida Statutes.

## GENERAL ALLEGATIONS

13. LWA is authorized by the State of Florida to operate as a dealer of motor vehicles, with authority to market and sale automobiles to consumers in the State of Florida under Chapter 320, Florida Statutes.

14. LWA is an independent automobile dealership whose primary business is the marketing and sale of preowned motor vehicles to consumers in the Central Florida area.

15. Pursuant to Chapter 320, Florida Statutes, an "Independent motor vehicle dealer" means any person other than a franchised or wholesale motor vehicle dealer who engages in the business of buying, selling, or dealing in motor vehicles, and who may service and repair motor vehicles.

16. Chapter 320 further provides:

> LICENSE REQUIRED. —No person shall engage in business as, serve in the capacity of, or act as a motor vehicle dealer in this state without first obtaining a license therefor in the appropriate classification as provided in this section. With the exception of transactions with motor vehicle auctions, no person other than a licensed motor vehicle dealer may advertise for sale any motor vehicle belonging to another party unless as a direct result of a bona fide legal proceeding, court order, settlement of an estate, or by operation of law. However, owners of motor vehicles titled in their names may advertise and offer vehicles for sale on their own behalf. It shall be unlawful for a licensed motor vehicle dealer to allow any person other than a bona fide employee to use the motor vehicle dealer license for the purpose of acting in the capacity of or conducting motor vehicle sales transactions as a motor vehicle dealer. Any person selling or offering a motor vehicle for sale in violation of the licensing requirements of this subsection, or who misrepresents to any person its relationship with any manufacturer, importer, or distributor, in addition to the penalties provided herein, shall be deemed guilty of an unfair and deceptive trade practice as defined in part II of chapter 501 and shall be subject to the provisions of subsections (8) and (9).

17. LWA operates an independent automobile dealership at 920 Silkwood Court, in Longwood, Florida, and is licensed and authorized to do so pursuant to Chapter 320, Florida Statute.

18. LWA acquires its inventory by purchasing preowned motor vehicles at authorized vehicle auctions throughout Florida, and finances those purchases vis-à-vis inventory finance companies known as "flooring companies" in the industry.

19. TORRES approached MORRIS, in July 2023, about the prospect of assisting LWA with marketing and selling preowned motor vehicles under LWA's dealership license, so TORRES could learn the business and potentially own and operate a dealership in the future.

20. There was no formal or written agreement between PLAINTIFFS and DEFENDANTS that authorizes or allows DEFENDANTS to operate a separate automobile dealership at the location where LWA operates its business, grants TORRES any ownership interest or management authority in LWA, or which permits Defendants to engage in any type of business activity that conflicts with LWA's business.

21. TORRES claims that he formed CMG for, according to his representations to PLAINTIFFS, to collect commissions on the sale of LWA vehicles; there was never an agreement that would permit DEFENDANTS to operate as an independent motor vehicle dealership, compete with LWA, conduct illegal activity on LWA's dealership location, or engage in any business activity that conflicts with LWA's business or which places LWA's business in jeopardy.

22. TORRES told MORRIS that the sole purpose of CMG was to enable him to work with other individuals to learn the business, with the expectation of theoretically entering into a more formal relationship with LWA or start his own dealership at a different location.

23. Unbeknownst to PLAINTIFFS, however, TORRES had ulterior motives, which included creating a criminal enterprise that would enable him and his co-conspirators to profit from such illegal and criminal behavior described later in this pleading.

24. LWA gave a sublease to TORRES and CMG on a second building on its premises to enable them to set up office space on the west side of the car lot to enable TORRES and his "team" to set up and o sell preowned motor vehicles as independent salesman of LWA; it was never contemplated that TORRES or any of his team would become employees of LWA, or that any of them would have any ownership interest in LWA or any vehicle purchased under LWA's dealership licenses.  The only agreement was that LWA would pay a commission to CMG for any sale executed by TORRES or a member of his "team".

25. TORRES and CMG were permitted to sell LWA's current inventory, future inventory acquired by LWA for its lot.

26. Additionally, LWA facilitated TORRES using LWA's purchasing account with the three auction houses in the area, and limited use of LWA's inventory finance facility to enable TORRES to identify vehicles that he and his team could sell at the dealership.

27. TORRES was permitted to go the auction to identify preowned vehicles that could be sold on the lot, and if he identified quality vehicles for purchase, he could sell those through LWA and obtain a larger commission on the sale.

28. TORRES was aware that all vehicles purchased through LWA's credit facility and under its dealership license, would be the sole and exclusive property of LWA and not TORRES or CMG, with all right, title, and interest in the vehicle being LWA's until the vehicle is sold to a customer.

29. TORRES was likewise aware that he did not authorization, from LWA or under the laws of the State of Florida, to operate as a license dealer, which means he could not market or sale motor vehicles on behalf of any person or entity, other than LWA.

30. TORRES, despite knowing the limitations discussed above, embarked on an illegal campaign to market and sale motor vehicles on behalf and in the name of CMG, and often engaged consumers under the false representation that he owned the dealership – as depicted in the screen shots below:









31. DEFENDANTS' actions constitute a violation of Chapter 320, Florida Statues, an act of fraud, an unfair and deceptive trade practice, in addition to a myriad of Florida criminal and civil statutes.

32. In addition to engaging in unfair and deceptive trade practices with respect to the marketing and selling of motor vehicles, TORRES, through his criminal enterprise CMG, engaged in the following additional criminal actions:

    a. Upon information and belief, TORRES, acting in concert with Gerardo De Alba, Sonia Burgos, Geraldine Torres, Josue Moreno, Victor Garcia, Angel Rivera, and other unknown criminal accomplices (hereinafter the "Criminal Enterprise") engage in several acts of extortion against LWA and its principals, including without limitation – stealing motor vehicles from LWA and refusing to return them unless LWA agreed to pay a ransom; stealing the keys to several vehicles on the lot, and likewise refusing to return them unless and until LWA pays the ransom; using physical force and threats of doing physical violence against MORRIS and others unless PLAINTIFFS agreed to allow DEFENDANTS to operate their business in the manner in which DEFENDANTS wanted to operate, even knowing that many of the acts they wanted to be paid for or permitted to do were illegal.

b. Upon information and belief, the Criminal Enterprise, acting in concert, committed theft or robbery of motor vehicles from the lot, and stole the keys to other motor vehicles on the lot, and have refused to return the vehicles and keys knowing that they did not have the right or authority to remove them.

c. Upon information and belief, the Criminal Enterprise, acting in concert, forged title, and registration to various trade in vehicles, titling at least two vehicles in the name of TORRES, knowing that those trade ins were property of LWA, and that TORRES did not have authorization to criminally convert ownership of those vehicles.

d. Upon information and belief, the Criminal Enterprise, acting in concert, misappropriated cash deposits from customers on at least three occasions.

e. Upon information and belief, the Criminal Enterprise, acting in concert, made value and misleading statements to customers to induce them into purchasing vehicles, which includes without limitation, make representations about the repair and maintenance of vehicles in violation of Chapter 320, Florida Statutes, and reciprocal Florida criminal laws.

f. Upon information and belief, the Criminal Enterprise intentionally bounced checks written to the order of LWA, which were payments for services provided by LWA to the DEFENDANTS.

g. Upon information and belief, the Criminal Enterprise engaged in wire fraud by electronically submitted fraudulent information to the FDMV, financial institutions, auction houses, and other third parties, in the name of LWA and their own, to fraudulently transfer title of vehicles, convert vehicles onto themselves, among other things.

h. Upon information and belief, the Criminal Enterprise made false applications for credit accounts with various third parties in the name of LWA, without obtaining LWA's consent, approval, and authorization to enter into such credit arrangements with vendors.

i. In addition to creating various false credit accounts, DEFENDANTS failed to pay the credit accounts despite charging several hundreds if not thousands of dollars of purchases on the credit of LWA.

j. Upon information and belief, the Criminal Enterprise converted to their own use, LWA tools and motor vehicle parts.

k. Upon information and belief, the Criminal Enterprise, acting in concert, slandered LWA and MORRIS using Google Review and other internet social media as a method of extortion and harassment, a fact confirm

by Google itself which deemed the aberrant behavior as hate review, bullying, and harassment.

l.  Upon information and belief, the Criminal Enterprise, acting in concert, used social media, Google Advertising, and other social media and online opportunities illegally representing to the public that CMG was a license automobile dealership, and suggesting that it was independent from LWA and superior to LWA, thus harming LWA's business.

m. Upon information and belief, the Criminal Enterprise, acting in concert, operated several unlicensed business enterprises on LWA's premises, including a church where TORRES illegally collected donations from the individuals lured to the premises to attend his weekend services.

n.  Upon information and belief, the Criminal Enterprise, acting in concert, absconded with and misappropriated three dealer license plate issued by the State of Florida and registered solely in the name of LWA, despite several demands for their return.

o.  Upon information and belief, the Criminal Enterprise, acting in concert, absconded with and misappropriated motor vehicles purchased by customers of LWA, under the guise of performing repairs on the vehicles, without performing the repairs.

33. Upon information and believe, DEFENDANTS never intended to operate a legitimate business enterprise, and never intended to work in good faith with PLAINTIFFS.

34. DEFENDANTS spawned a façade of a legitimate automobile dealership to lure unsuspecting consumers into their web of deception to cheat the consumer, in addition to coming acts of theft and deception against PLAINTIFFS, for financial gain at the expense of the consumer and PLAINTIFFS.

## CONDITIONS PRECEDENT ALLEGATIONS

35. PLAINTIFFS have retained the services of éclat law PA to serve as their trial counsel to pursue the remedies articulated in this pleading, and PLAINTIFFS are obligated to pay their attorneys a reasonable fee for their services and reimburse them for all costs incurred in connection with their representation of PLAINTIFFS in this matter.

36. All conditions precedent to filing this lawsuit have been satisfied, have been waived, have occurred, or a combination of the foregoing.

## COUNT I – CIVIL RICO

37. Plaintiffs adopt and reallege the allegations contained in paragraphs 1 through 36 above as if fully stated in this claim.

38. This is an action against the Defendants for violation of the Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 USC §§ 1961-1968.

39. Paragraph 32(a) defines the Criminal Enterprise that is the subject of this RICO claim.

40. Paragraphs 32(a)-(o) provide the details of both the criminal activity giving rise to this claim, and DEFENDANTS' pattern and practice of engaging in such activity.

41. The predicate acts described in Paragraphs 32(a)-(o) were all committed within the ten-year statutory period required by the RICO Act.

42. The predicate acts described in Paragraphs 32(a)-(o) affect interstate commerce because they involved wire fraud and affected financial institutions, business enterprises, and individuals part of interstate commerce.

43. The predicate acts described in Paragraphs 32(a)-(o) caused PLAINTIFFS to suffer financial harm of more than $150,000, and PLAINTIFFS' financial risk exposure continues to increase as the Criminal Enterprise continues their criminal and devious behavior.

44. The financial and other harm suffered by PLAINTIFFS are a direct and proximate cause of the acts and omissions of DEFENDANTS described herein.

WHEREFORE, LONGWOOD AUTO LLC and MICHAEL MORRIS demand judgment in their favor and against the two defendants for all remedies available to them under 18 USC §§ 1961-1968, together with such further and additional remedies this Court deems just under the circumstances.

## COUNT II – CIVIL THEFT

45. Plaintiffs adopt and reallege the allegations contained in paragraphs 1 through 36 above as if fully stated in this claim.

46. This is an action against DEFENDANTS for violation Florida's Civil Remedies for Criminal Practices Act, §772.11 et seq, Florida Statutes.

47. Paragraphs 32(a)-(o) provide the details of both the criminal activity giving rise to this claim, and DEFENDANTS' pattern and practice of engaging in such activity.

48. The predicate acts described in Paragraphs 32(a)-(o) caused PLAINTIFFS to suffer financial harm more than $150,000, and Plaintiffs' financial risk exposure continues to increase as the Criminal Enterprise continues their criminal and devious behavior.

49. The financial and other harm suffered by the Plaintiffs are a direct and proximate cause of the acts and omissions of the Defendants described herein.

WHEREFORE, LONGWOOD AUTO LLC and MICHAEL MORRIS demand judgment in their favor and against the two defendants for all remedies available to them under §772.11 et seq, Florida Statutes, together with such further and additional remedies this Court deems just under the circumstances.

## **COUNT III – FRAUD**

50. PLAINTIFFS adopt and reallege the allegations contained in paragraphs 1 through 36 above as if fully stated in this claim.

51. This is an action against DEFENDANTS for fraud concerning the Sublease attached as *Exhibit 1* to this pleading and the Promissory Note attached as *Exhibit 2*.

52. PLAINTIFFS seek financial compensation for the harm they have experienced related to the sublease agreement attached as Exhibit 1, the promissory note attached as Exhibit 2, and the related to all business dealings PLAINTIFFS had with DEFENDANTS because of fraud that induce PLAINTIFFS into entering into the two agreements attached and engaging in business activities described above.

53. Paragraphs 32(a)-(o) provide the details of both the criminal and fraudulent activity giving rise to this claim, and DEFENDANTS' pattern and practice of engaging in such activity.

54. The acts and omissions described in Paragraphs 32(a)-(o) caused PLAINTIFFS to suffer financial harm more than $150,000, and PLAINTIFFS' financial risk exposure continues to increase as the Criminal Enterprise continues their criminal and devious behavior.

55. The financial and other harm suffered by PLAINTIFFS are a direct and proximate cause of the acts and omissions of DEFENDANTS described herein.

WHEREFORE, LONGWOOD AUTO LLC and MICHAEL MORRIS demand judgment in their favor and against the two defendants for all remedies available to them under Florida law, together with such further and additional remedies this Court deems just under the circumstances.

## **COUNT IV – TORTIOUS INTERFERENCE**

56. PLAINTIFFS adopt and reallege the allegations contained in paragraphs 1 through 36 above as if fully stated in this claim.

57. This is an action against DEFENDANTS for tortious interference with LWA's beneficial business relationships and business operations.

58. Paragraphs 32(a)-(o) provide the details of both the criminal and fraudulent activity giving rise to this claim, and DEFENDANTS' pattern and practice of engaging in such activity, which tortiously interfered with LWA's business relationships with its vendors, its creditors, its existing and potential customers, its relationship with the auction house where it purchases it inventory, and with local law enforcement due to the numerous times the Criminal Enterprise wrongfully called local law enforcement with a false report about MORRIS and LWA.

59. The acts and omissions described in Paragraphs 32(a)-(o) caused PLAINTIFFS to suffer financial harm more than $250,000, and PLAINTIFFS'

financial risk exposure continues to increase as the Criminal Enterprise continues their criminal and devious behavior.

60. The financial and other harm suffered by PLAINTIFFS are a direct and proximate cause of the acts and omissions of DEFENDANTS described herein.

WHEREFORE, LONGWOOD AUTO LLC and MICHAEL MORRIS demand judgment in their favor and against the two defendants for all remedies available to them under Florida law, together with such further and additional remedies this Court deems just under the circumstances.

Respectfully submitted,

_____
Kevin K. Ross, FBN 66214 – Lead Trial Counsel
Email: kevin.ross@eclatlaw.com

*eclat law PA*
307 Cranes Roost Boulevard, STE 2010
Altamonte Springs, Florida 32701
Phone: (407) 636-7004
Facsimile: (888) 413-0249

*Trial Counsel for the Plaintiffs*